**Frances M. KHAN, Plaintiff,**

v.

**STATE OF MARYLAND, et al., Defendants.**

**Civ. A. No. AMD 94–2034.**

United States District Court, D. Maryland.

Sept. 29, 1995.

---

law to the extent now or hereafter prescribed by local law...."

We need not reach the question whether the transfer of original jurisdiction implicitly repealed 5 V.I.C. § 1361 since our authority to issue the writ is clear under 4 V.I.C. § 34. We only note that the Legislature may not preclude review of a judgment which involves a constitutional right. *See Government of the Virgin Islands v. Warner,* 48 F.3d 688, 693 (3d Cir.1995).

**4.** *La Buy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); *see Virgin Islands Housing Finance Authority v. Smith,* 762 F.Supp. 661 (D.V.I.App.1991) *remanded and dismissed as moot,* 953 F.2d 1382 (3d Cir.1992).

**5.** To determine whether mandamus is appropriate or whether the petition states a claim upon which relief can be granted, this Court must examine the substantive issue. Accordingly, we find that dismissal based on these grounds would be premature.

James Richard Lupinek, Ellicott City, MD, for plaintiff.

Sheila Edwards Lundy, Office of the Attorney General, Motor Vehicle Administration, Glen Burnie, MD, J. Joseph Curran, Jr., Office of the Attorney General, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

DAVIS, District Judge.

Plaintiff, Frances M. Khan, brings this racial discrimination action against defendant, State of Maryland, through the state Motor Vehicle Administration ("MVA"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.,* and 42 U.S.C. § 1981.[1] Her claims arise from MVA's failure to promote Khan to the position of Assistant Chief Investigator of the Division of Licensing and Consumer Services, and other alleged discriminatory acts. As relief, Khan seeks compensatory and punitive damages, declaratory, injunctive and equitable relief, attorney's fees and expenses. Pending before the Court is MVA's Motion for Summary Judgment. The parties have fully briefed the issues presented. Pursuant to Local Rule 105.6, the motion will be decided without a hearing. For the reasons set forth below, the motion shall be granted in part and denied in part, and the remaining state law claim shall be dismissed without prejudice.

## I. FACTS

The material facts are undisputed. In 1974, Khan, a black female, began her employment with the Maryland Department of Transportation ("MDOT"), Toll Facilities Police, first as a dispatcher and then as a Toll Facilities police officer. In less than two years on the police force, she was promoted to corporal. As a corporal, among other duties, she was required to assist a sergeant in the supervision of 15 to 20 officers and to make court appearances.

In 1985, Khan took steps to transfer, within MDOT, from the Toll Facilities Police to MVA. In 1986, she accepted a position at

---

1. The caption of the complaint lists as one defendant "State of Maryland/Motor Vehicle Administration." However, the body of the complaint refers to those two entities in the plural. For ease of reference, and because in fact only one entity is a party defendant, this opinion shall use the terms "defendant" and "MVA."

MVA as an Investigative Field Agent I, and she was promoted to Investigative Field Agent II in January 1987. After two years of MVA investigative work experience, Khan successfully applied, in September 1988, for the Consumer Services Investigator II position within the Division of Licensing and Consumer Services of MVA ("Division"). One month later, Khan was recommended for promotion by the Chief Investigator, and was reclassified as a level III investigator within the Division. As a Consumer Services Investigator, Khan received superior performance ratings from her supervisors, and received accolades from consumers appreciating her service. Consequently, Khan was appointed Acting Chief Investigator of the Division when Ronald L. Billingsley, the Chief Investigator, went on vacation in August 1993. During her tenure at the Division from 1988 through 1993, Khan's job performance was superior, and she experienced no incidents for which she was disciplined.

In June 1993, Khan applied for the position of Consumer Services Investigations Assistant Chief. The minimal prerequisites for the position were a high school diploma and six years of investigative work experience. Khan's application received a score of 99.90%, and was placed in the "Best Qualified" category together with five other applications.[2] The interviews were conducted by a panel composed of three white males: Ronald Forbes, Director of the Division; Andrew Srebroski, Assistant Director of the Division; and Ronald Billingsley, Chief Investigator of Consumer Services. The panel had received personnel packets on the candidates and a list of standardized questions to ask the candidates from MDOT's Human Resources Division. Panel members were aware that the six candidates were on the "Best Qualified" list; however, they were not aware of any individual candidate's score. The panel conducted all of the interviews in one day in thirty-minute intervals, and allotted ten minutes at the end of each interview during which each candidate wrote a short memo explaining why he or she believed that he or she was best qualified for the assistant chief position.

After several weeks of deliberation, the panel members met and selected their top choices. Each panelist chose a different candidate as his first choice: Forbes chose Bianca; Srebroski chose Forstner; and Billingsley chose the plaintiff, Khan. Bianca, who was both Srebroski's and Billingsley's second choice, was ultimately selected for the assistant chief position. For reasons that are unclear, Khan did not receive written notification from MVA concerning her non-selection. Instead, she learned of Bianca's selection by word-of-mouth, and was later told personally by the members of the interview panel in a private meeting. At that meeting, the panel members apologized for the manner in which Khan had discovered that she was not selected for the position, and articulated the reasons for their selection. Dissatisfied with their explanation, Khan filed an internal grievance with the MVA, alleging that she was not selected as a result of racial discrimination.

The First Step Grievance Hearing was held with Thomas Walsh, Associate Director of MVA, presiding. Khan was represented by a union representative. Walsh concluded that there was no evidence to support Khan's contention that she was more qualified than Bianca, the candidate selected, or that Khan was the victim of racial discrimination. Khan then filed a complaint against MVA with the Equal Employment Opportunity Commission ("EEOC"). However, because the EEOC was unable to investigate her charge within the statutorily proscribed 180–day period, Khan was given a "Right-to-Sue" letter to file suit against MVA.

Khan's four count complaint against MVA alleges federal claims for discriminatory denial of promotion and retaliation, and a state law breach of contract claim. MVA has moved for summary judgment on the

**2.** The other candidates who were named to the "Best Qualified" list and selected for interviews were: Rose Bianca, a white female; Barry A. Segeliken, a white male; Charles Johnson, Jr., a black male; Charles W. Scrimger, a white male; and Ronald F. Forstner, a white male. Counsel for defendant asked Khan on deposition whether she was aware that all of the "Best Qualified" candidates earned a score of 99.90%, however, there is no affirmative showing in the record that the suggestion by counsel was accurate.

grounds that Khan has failed to present a genuine dispute as to any material facts and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate only when a close examination of the pleadings, affidavits and depositions shows that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991). The facts, as well as the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). The burden is on the defendant, as the moving party, to demonstrate the absence of any dispute of material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In Title VII cases, courts should be wary of summary judgment motions because a party's intent is often the crucial element in such cases. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981). Summary judgment is appropriate in such cases, however, where any factual dispute does not rise to the level of a "genuine issue of material facts." *See Boarman v. Sullivan,* 769 F.Supp. 904 (D.Md.1991) ("traditional precepts of summary judgment may apply, except where the evidence presents a genuine issue of motive"). Summary judgment should also be granted when a party "fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

## III. DISCUSSION

### A. Title VII Claims

#### 1. DISCRIMINATORY DENIAL OF PROMOTION

In an action under Title VII of the Civil Rights Act,[3] the plaintiff can establish a prima facie case of racial discrimination in one of two ways. First, the plaintiff can offer either direct evidence of discrimination or indirect evidence whose cumulative probative force would support to a reasonable probability the inference that "but for" plaintiff's race, she would have been promoted. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976) (holding that claims under § 2000e–2 are resolved by the "but for" standard); *see also Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 240 (4th Cir.1982). Alternatively, plaintiff can establish a prima facie case of racial discrimination by meeting the requirements of the framework set out in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), which has been modified by federal courts. The Fourth Circuit has allowed plaintiffs to establish a prima facie claim of racial discrimination by proving by a preponderance of the evidence that

1. she is a member of a protected group;

2. she applied for the position in question;

3. she was qualified for the position; and

4. she was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination.

*Alvarado v. Board of Trustees,* 928 F.2d 118, 121 (4th Cir.1991) (adopting the district court's modified *McDonnell* test); *see also Patterson v. McLean Credit Union,* 491 U.S.

---

3. 42 U.S.C. § 2000e–2(a)(1) provides:
   It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .

164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989).

Proof of a prima facie case gives rise to an inference of discrimination which the employer can rebut by presenting evidence that the employee was rejected for legitimate non-discriminatory reasons. If the defendant meets this burden, plaintiff is then given a chance to show that the employer's proffered reasons are merely pretextual. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *see also McNairn v. Sullivan*, 929 F.2d 974, 978 (4th Cir.1991).

In the instant case, Khan has produced no direct evidence and insufficient indirect evidence that suggests race was a "but for" factor in the MVA's decision not to promote her. Therefore, in order to avoid summary judgment, she must satisfy the Fourth Circuit's modified *McDonnell* test.

Khan has satisfied the elements that constitute a prima facie case of racial discrimination under the modified *McDonnell* test. She is a black female and she properly applied for the assistant chief investigator position. Moreover, there is no dispute that Khan was qualified for that position. In fact, she was among the "Best Qualified" candidates and received a 99.90% eligibility score from MDOT Human Resources. Finally, MDOT awarded the Consumer Services Assistant Chief position to Bianca, a white female. *See Alvarado*, 928 F.2d at 121. Furthermore, although the panel members did not select Khan for the assistant chief position, they had found Khan qualified to serve as Acting Chief Investigator "with full authority to supervise the unit" during Billings-

ley's upcoming vacation. *See* Pl.'s Opp'n to Mot.Summ.J., Ex. 14. Indisputably, these facts constitute a prima facie case of racial discrimination. Thus, the burden clearly shifts to MVA to articulate legitimate non-discriminatory reasons for Khan's non-selection.

MVA has effectively rebutted the inference of discrimination by its showing that Khan was not promoted because she was not the best qualified candidate for the position, i.e., that there were legitimate non-discriminatory reasons for her non-selection. Specifically, panel members assert that: (1) Khan had three years less investigative work experience than Bianca; (2) Khan failed to complete her application properly;[4] (3) Khan's responses to the standardized questions were limited, requiring the panel to pose additional questions in an attempt to have her elaborate on her answers; and (4) Khan's writing sample diminished her candidacy because it was not well-written.[5] Thus, this Court concludes that MVA has met its burden of articulating "legitimate non-discriminatory" reasons for not selecting Khan for the assistant chief position. *McDonnell*, 411 U.S. at 802, 93 S.Ct. at 1824; *see also McNairn* 929 F.2d at 978. Thus, the burden of production shifts back to Khan to show that the reasons articulated by MVA are merely a pretext for racial discrimination. *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093.

Viewing the facts in the light most favorable to Khan, she offers no legally probative evidence to show that MVA's articulated reasons for not hiring her are pretextual. First, Khan contends that MVA's proffered reasons are exposed as pretextual because

---

4. Khan testified at her deposition that she did not think that she had to complete the application fully because she had already completed one for MDOT Human Resources two months prior to the interview. Apparently, there were two required forms: an application and a "personal inquiry." Khan failed to complete the personal inquiry.

5. Khan's memo reads:
   In regards to the application submitted for Assistant Chief. [sic]
   I feel I [sic] best qualify [sic] for the job based on my background [sic] work [sic] skills

[sic] and law enforcement training [sic] Also my Daily [sic] contact with the aspects of the job, the ability to communicate with the public, and the tactics to use against the dealers in getting cases resolved. [sic] I have an excellent leave record (no abused sick leave usage [sic] and I work well with my fellow employees. I have the advantage over the other applicants due to my daily contact with the job requirement [sic] and working with the current chief. I feel someone with current knowledge would perform the job better than a trainee. Pl.'s Opp'n to Mot.Summ. J., at Ex. 11.

she has shown that she was better qualified than Bianca. *See Patterson,* 491 U.S. at 189, 109 S.Ct. at 2379. Khan argues that she was the best qualified candidate because she had briefly handled the duties of the chief investigator when he went on vacation, and that she had always received favorable performance ratings. She recounts her substantial investigative work experience, and especially her knowledge of the laws and regulations enforced by the Division, and her ability to resolve cases efficiently. The panel's selection, however, was not limited to these factors.[6] Bianca had more years of relevant experience than Khan. She had acted as MVA's liaison at the state district court, conducted background investigations, appeared in court and testified on behalf of MVA. Moreover, the panel found Bianca's memorandum discussing her reasons for seeking the position to be better written than Khan's memorandum.[7] The fact that Khan believes that the panel should have selected her over Bianca for the position, alone, does not raise an inference of racial discrimination. In a discrimination case, "a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Moore v. Reese,* 817 F.Supp. 1290, 1295 (D.Md.1993) (quoting *Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 557 (5th Cir.1983), *cert. denied sub nom. Elliott v. Group Hospital Service, Inc.,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984)).

Next, Khan seeks support for her claim of pretext in her assertion that she was routinely excluded from conferences and training sessions because of her race. She specifically claims that she was interested in attending an "odometer conference" and in appearing on a televised news segment on the "Lemon Laws," but was excluded from doing so by her supervisors because of her race. These assertions are not supported by the facts, and are insufficient to create an inference of discrimination. As to the "odometer conference", Khan admitted that only a limited number of investigators were sent to the conference. Their selection was based on specialty and interest. Khan admits that she does not specialize in the "odometer" area, and that until recently she had never expressed an interest to Billingsley. When she belatedly expressed an interest, Billingsley apologized and told her to "get a memo … in to him." Khan's Dep. at 54. As to the "Lemon Laws" program, when Khan confronted Billingsley about not being selected to appear on the television interview, he told her that he had selected the two most experienced and senior investigators because he had expected that there would be questions on other areas in addition to the "Lemon Laws."

Neither individually, nor collectively, do these incidents support the specific contention that defendant's reasons for Khan's non-selection are pretextual or raise an inference of racial discrimination, in general. There existed legitimate non-discriminatory reasons why Khan (and most of the Division's investigators) were excluded from the conference and from the television interview. Moreover,

---

**6.** The MVA promotional announcement provided a list of "Required Knowledge, Skills, and Abilities":

Knowledge of courtroom procedures and rules of evidence for courtroom presentations;
Knowledge of general investigative techniques;
Ability to learn the laws, rules and regulations of the State of Maryland and Federal Government applicable to vehicle dealerships or pertinent to the field of consumer protection relating to the automobile industry;
Ability to plan, organize and direct the work of others;
Ability to develop and install operational procedures and evaluate their effectiveness and efficiency;
Ability to prepare and present a variety of administrative and investigative reports and records;

Ability to determine the need for personnel, equipment and supplies;
Ability to exercise initiative and make sound decisions; [and]
Ability to establish and maintain effective and harmonious working relationships with agency employees, administrative officials and general public.
Pl.'s Opp'n to Mot.Summ. J., Ex. 8b.

**7.** Throughout Khan's deposition, the prevailing theme is that she was the best qualified candidate because she worked in the Division and, therefore, if she were selected she would not have required significant training. Although Billingsley gave Khan's experience substantial weight in his selection, *see* Billingsley Dep., prior experience **in the Division** was not one of the selection criteria. *See* note 6 *supra.*

the fact that Billingsley selected Khan as his first choice for the assistant chief position militates against a finding that he had a discriminatory motive in these incidents. Nor has Khan come forward with evidence that the decision of the other two panel members not to include her as one of their top two candidates was based on impermissible considerations.

■ Finally, Khan also claims that the absence of black personnel within the management of the Division shows that MVA's hiring and promotion practices have a disparate impact on blacks, particularly black females. *See McNairn,* 929 F.2d at 979. To support this claim, Khan cites MDOT's Affirmative Action Plan for Fiscal Years 1991–1995 to show that there is an overrepresentation of black workers in the lower-paid positions, and an underrepresentation in the administrative and professional levels. Khan asserts that ten more black females are needed in order for MDOT to reach its stated goal. While the Court encourages MDOT and MVA to be cognizant of their affirmative action goals, Khan has provided no evidence that specific elements of MVA's selection standards have an adverse impact on black candidates.[8] *Id.*

In summary, this Court concludes that Khan has failed to meet her burden of producing evidence that MVA's articulated nondiscriminatory reasons for not selecting her for the assistant chief investigator position are merely pretexts for forbidden racial discrimination. *See Rachelson v. Secretary, U.S. DHHS,* 834 F.Supp. 879, 884–86 (D.Md. 1993) (age discrimination); *Moore v. Reese,* 817 F.Supp. 1290, 1297–1299 (D.Md.1993). Furthermore, this Court finds that Khan has failed to overcome MVA's showing that there are no genuine disputes of material fact. MVA, therefore, is entitled to judgment as a matter of law on the promotion claim.

---

**8.** To establish a prima facie case of disparate impact, Khan must show (1) that there is an underrepresentation of the qualified blacks promoted to the positions at issue, and (2) that specific elements of MVA's promotion criteria had a significant disparate impact on blacks.

### 2. RETALIATORY DISCRIMINATION

Khan alleges in Count III of her Complaint that:

> By denying the promotion to Plaintiff Frances Khan because [s]he had previously filed a complaint with the EEOC against Defendants for race discrimination and racial harassment, Defendants have violated Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991.

Complaint, at 9. Because Khan has failed to provide the Court with any facts supporting this allegation, and has failed to amend her Complaint, MVA's Motion for Summary Judgment on this claim shall be granted.

### B. Section 1981 Claim

■ Khan also seeks relief pursuant to 42 U.S.C. § 1981. She alleges that her failure to receive the promotion was racially motivated, and therefore a violation of her right to make a contract as protected under the statute. Because Khan filed this claim against MVA, a state agency, the Court must dismiss this claim for lack of federal jurisdiction, under the Eleventh Amendment to the U.S. Constitution. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984). The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." The Supreme Court has interpreted the Eleventh Amendment prohibition against federal courts deciding claims brought against states to include suits brought by a citizen against his own state, *see Hans v. Louisiana,* 134 U.S. 1, 20–21, 10 S.Ct. 504, 509, 33 L.Ed. 842 (1890), and suits brought against state agencies, *see, e.g., Florida Dept. of Health & Rehab. Svcs. v. Florida Nursing Home Assn.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981). A state may consent to a lawsuit and thereby waive

---

*See McNairn,* 929 F.2d at 979 (citing *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)). Khan has failed to produce any evidence to support these elements.

its sovereign immunity, but only "by the most express language or by such overwhelming implications from the text as to leave no room for any other reasonable construction." *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974). Here, the State of Maryland has not consented to suit on this claim. Hence, the 42 U.S.C. § 1981 claim is prohibited by the Eleventh Amendment. *See McAdoo v. Toll,* 591 F.Supp. 1399, 1402 (D.Md.1984); *see also Freeman v. Michigan Dept. of State,* 808 F.2d 1174, 1178–79 (6th Cir.1987); *Rucker v. Higher Educ. Aids Bd.,* 669 F.2d 1179, 1184 (7th Cir.1982); *Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1069 (5th Cir.1981). Consequently, MVA's Motion for Summary Judgment on this claim shall be granted.

*C. Breach of contract claim*

██ Finally, Khan contends that MVA has breached an alleged contract with her not to engage in unlawful discrimination. Because this claim for breach of contract arises under state contract law and the Court has granted summary judgment on all federal claims, the Court declines to exercise supplemental jurisdiction over this claim. Therefore, Khan's pendent claim for breach of contract must be dismissed without prejudice for lack of federal jurisdiction. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also Sigmon v. Poe,* 564 F.2d 1093, 1096 (4th Cir.1977); *Lane v. David P. Jacobson & Co., Ltd.,* 880 F.Supp. 1091, 1096 (E.D.Va.1995). Accordingly, MVA's Motion for Summary Judgment on this claim shall be denied, and the complaint shall be dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth, this Court concludes that MVA has established that there exists no dispute of material fact, and that, as a matter of law, it has articulated legitimate non-discriminatory reasons for refusing to promote Khan. Moreover, Khan has failed to produce any probative evidence that MVA's asserted reasons for her non-selection for promotion are pretextual, or that otherwise raises an inference of racial discrimina-

tion. Defendant has not waived immunity as to the § 1981 claim. Accordingly, defendant is entitled to judgment as a matter of law as to Khan's federal claims. This Court having disposed of Khan's federal claims on summary judgment, Khan's state law claims shall be dismissed without prejudice. A separate order is entered herewith.