Linda PRINCE–GARRISON

v.

**MARYLAND DEPARTMENT OF HEALTH AND MENTAL HYGIENE.**

Civil Action No. CCB–07–1165.

United States District Court, D. Maryland.

Dec. 13, 2007.

Michael J. Snider, Ari Taragin, Jacob Yaakov Statman, Jason I. Weisbrot, Jeffery Charles Taylor, Snider and Associates LLC, Baltimore, MD, for Linda Prince–Garrison.

John S. Nugent, Office of the Attorney General, Baltimore, MD, for Maryland Department of Health and Mental Hygiene.

### *MEMORANDUM*

CATHERINE C. BLAKE, District Judge.

Now pending before the court is a motion to dismiss filed by defendant Maryland State Department of Health and Mental Hygiene, Maryland Board of Pharmacy ("DHMH") against plaintiff Linda Prince–Garrison ("Garrison"). Garrison asserts numerous claims related to her employment with the DHMH under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1981, and Art. 49B

of the Annotated Code of Maryland. In response, the defendant has filed this motion to dismiss on the grounds that: (i) Garrison has failed to state a cause of action under Title VII; (ii) the court lacks jurisdiction over the defendant on the ADA claim; (iii) the defendant is immune from suit under § 1981; and (iv) Garrison lacks a viable state claim under Art. 49B. The issues in this motion have been fully briefed and no hearing is necessary. For the reasons stated below, the defendant's motion will be granted.

## BACKGROUND

Because the court is considering a motion to dismiss, the factual background of the case is taken entirely from Garrison's complaint. Garrison was hired by the DHMH on January 5, 2005, and worked as an Administrative Specialist in the Compliance Unit under her immediate supervisor, Mr. Chandra Mouli ("Mouli"). (Complaint at ¶ 5.) Garrison alleges that, soon after she began working, she was subject to a series of hostile acts and disparate treatment by Mouli. (Id. at ¶ 19.) Mouli "did this by (1) his non verbal conduct, (2) his subjecting her to pervasive verbal harassment, (3) his giving her just clerical assignments to perform, and (4) his repeated failure to provide her with necessary equipment and training and/or instructions to enable her to perform her job satisfactorily." (Id.)

During the months of March and April of 2005, Garrison alleges that "she orally complained to Mr. Mouli [and the DHMH's Executive Director, Laverne Naesea ("Naesea")] that she was being harassed and stereotyped by him, treated differently than non African American females in the department, and that she was being unfairly singled out for harassment unlike co-workers not in her protected classes." (Id. at ¶ ¶ 20, 21.) According to Garrison, Mouli would respond by reporting Garrison to Naesea, "alleging that [she] was just being disruptive and lacking in productivity regarding [her] job duties." (Id. at ¶ 22.)

On April 15, 2005, Mouli handed Garrison a termination letter effective April 29, 2005, based on her inability to perform satisfactorily. (Id. at ¶ 26.) This employment decision was sent to mediation on April 18, where the termination was rescinded and Garrison was instead given a written reprimand for her inappropriate behavior. (Id. at ¶ 28.) Without providing any further detail, Garrison asserts that, after this meeting, Mouli began to micromanage her duties, unfairly scrutinize her work performance, impose hostile disciplinary measures, and speak to her in a condescending and demeaning manner. (Id. at ¶ 31.) Garrison further alleges that she "was the only employee for Defendant ... [who] was treated in this manner by Mr. Mouli." (Id. at ¶ 32.)

Garrison's turbulent employment continued at the DHMH, where she was given a five day suspension for insubordination in May 2005. (Id. at ¶ 36.) Furthermore, Garrison alleges that when she inquired about missing office supplies necessary to perform her work, she was informed that the supplies would be "about 3–4 months forthcoming in delivery." (Id. at ¶ 38.) In response, Garrison sent an email to the Maryland Commission on Human Rights ("MCHR") on May 10, 2005, complaining of "gender bias, national origin and race discrimination ... disparate treatment and hostile work environment...." (Id. at ¶ 39.) Garrison alleges that on May 12, 2005, many of her regular duties were reassigned to Colin Eversley, a Caucasian male. (Id. at ¶ 40.)

At a later meeting with Naesea, Garrison was asked to rescind her complaint letter about Mouli. (Id. at ¶ 46.) On June 16, 2005, Garrison received her work performance evaluation, in which Mouli stated

that "the Board cannot afford to miss deadlines or fail to address important issues, because of delays related to your lack of knowledge or negligence in notifying me that you have not completed a task ... continued poor performance will lead to progressive discipline up to and including termination." *(Id.* at ¶¶ 53, 54). Following this evaluation meeting, Garrison was again charged with insubordination and suspended for one day. *(Id.* at ¶ 56.)

In addition to suffering from alleged discrimination and a hostile work environment, Garrison asserts that she was denied reasonable accommodation for a foot injury she had sustained in July 2004 and for other physical disabilities. *(Id.* at ¶ 60.) Instead of being accommodated, Garrison claims she was required "to move heavy furniture, lift heavy objects, and walk repeatedly up and down stairs." *(Id.* at ¶ 62.) Additionally, Garrison alleges that she was denied leave for physical therapy sessions. *(Id.* at ¶ 64.)

In September of 2005, Garrison asserts that she began to suffer migraine headaches after continued harassment from Naesea. *(Id.* at ¶ 63.) Garrison also began to suffer from anxiety attacks, which in one case required hospitalization after she passed out at work. *(Id.* at ¶ 67.) After Garrison was granted a four-month leave of absence to cope with her diagnosed anxiety and depression *(id.* at ¶¶ 73, 74), she was ordered back to work by the DHMH. *(Id.* at ¶ 87.)

Following a continued cycle of alleged harassment and anxiety attacks, Garrison filed a second complaint of discrimination with the MCHR on March 3, 2006. *(Id.* at ¶ 95.) On March 7, 2006, Garrison was issued a second termination letter, and on June 21, 2006, "by a settlement agreement of the parties, the [previous] five days suspension, second termination letter, and performance evaluation were rescinded." *(Id.* at ¶¶ 96, 97.) Garrison agreed in turn to resign effective March 7, 2006, not to reapply to her former position for three years, and to end her internal grievance appeal of her previous suspension. *(Id.* at ¶ 98.) Garrison nonetheless filed this suit on May 8, 2007, claiming damages resulting from the DHMH's unlawful actions that caused her "to suffer psychological and emotional damages, suspensions with loss of pay, a loss of a job, a substantial loss of revenue or income and present and future economic benefits, and other tangible and non tangible terms, conditions, and privileges of her former employment." *(Id.* at ¶ 167.)

### ANALYSIS

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997). To survive a motion to dismiss, a complaint must "in light of the nature of the action ... sufficiently allege[ ] each element of the cause of action so as to inform the opposing party of the claim and its general basis." *Chao v. Rivendell Woods, Inc.,* 415 F.3d 342, 348 (4th Cir.2005). Following the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." "Once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969 (quoted in *Goodman v. Praxair,* 494 F.3d 458, 466 (4th Cir.2007)). Moreover, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65.

Garrison asserts claims against the DHMH under Title VII, the ADA, § 1981, and state law. Because Garrison fails to state a cause of action under Title VII, these claims will be dismissed. Garrison's ADA and § 1981 claims also will not survive this motion to dismiss because the state is immune from suit under both theories. Finally, because Garrison lacks a viable state law cause of action, the motion to dismiss will be granted as to these claims.

### The Title VII Claims

■ Garrison asserts three claims under Title VII, including race, national origin, or gender discrimination (Count I), hostile work environment (Count II), and retaliation (Count IV). Although considering only a hostile work environment claim, the Fourth Circuit in *Bass v. E.I. DuPont de Nemours & Co.* has stated that under Title VII, a plaintiff must set forth facts sufficient to allege each element of her claim. 324 F.3d 761, 765 (4th Cir.2003) (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir.2002)). A plaintiff is thus "required to allege facts that support a claim for relief ... the words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." *Id.*

■ As a general matter, to prove employment discrimination under Count I, Garrison must show that: "(1) [s]he is a member of a protected group; (2)[s]he

earned satisfactory performance marks; (3)[s]he suffered an adverse employment action; and (4) other similarly situated employees outside [her] protected class were treated more favorably." *McCain v. Waste Mgmt., Inc.,* 115 F.Supp.2d. 568, 573 (D.Md.2000). In addition to element one above, to prove disparate treatment in the enforcement of disciplinary measures, Garrison must demonstrate that: "the prohibited conduct in which [s]he engaged was comparable in seriousness to misconduct of employees outside the protected class, and [ ] that the disciplinary measures enforced against [her] were more severe than those enforced against those other employees." *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993).

As a matter of law, Garrison has failed to offer sufficient factual allegations to survive this motion to dismiss on Count I. First, Garrison is unable to suggest that she earned satisfactory performance marks at the DHMH. Instead, her tumultuous term of employment with the agency was consistently plagued with reports of deficient work performance. Second, aside from a one day suspension, Garrison does not offer any significant adverse employment actions that she suffered, because the voluntary settlement she entered with the DHMH resulted in a recision of her January 25, 2006, five-day suspension and a restoration of back pay for that period. Any other allegations of adverse employment action, including the lack of office supplies, fail to rise above the level of "trivial discomforts endemic to employment." *Boone v. Goldin,* 178 F.3d 253, 256 (4th Cir.1999); *see also McCain,* 115 F.Supp.2d. at 575 (noting that the Fourth Circuit has limited the term "adverse employment action" to ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensating). Finally, Garrison does not factually support her allegation that other similarly sit-

uated employees outside her protected class were treated more favorably or disciplined less severely for similar misconduct (i.e. a one-day suspension for insubordination). Bald conclusions and assertions that she was "the only employee for the Defendant ... that was treated" in a negative manner are simply insufficient for properly alleging a cause of action under Title VII. In sum, Garrison has alleged no facts that support her conclusion that she was discriminated against on the basis of race, national origin, or gender.

■ As to Count II, Garrison has similarly failed to allege sufficient facts to support her claim that harassment based on her race and/or gender created a "hostile working environment [that was] sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Carter v. Ball*, 33 F.3d 450, 461 (4th Cir.1994). In *Bass*, the Court found that bald assertions by the plaintiff that she suffered less pay and opportunity than others "because of her race and sex" were insufficient to support a claim for gender, race, or sex discrimination. 324 F.3d at 765. Here, aside from bare conclusions that she was discriminated against on the basis of her race and gender, Garrison does not provide any factual allegations that create even an inference of discrimination. Furthermore, Garrison's complaint does not allege a hostile environment that rises to the level of severity required by Title VII. Instead, even in the light most favorable to Garrison, "the facts she alleges merely tell a story of a workplace dispute ... and some perhaps callous behavior by her superiors. They do not describe the type of severe or pervasive gender [or] race ... based activity necessary to state a hostile work environment claim." *Id.* Count II will therefore be dismissed.

■ Finally, as to Garrison's Count IV retaliation claim, she has failed to adequately plead that "(1) she engaged in protected activity; (2) the defendant took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action." *Mackey v. Shalala*, 43 F.Supp.2d 559, 568 (D.Md.1999). The Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v. White* noted that an adverse employment action in a retaliation claim does not need to be an ultimate employment decision, as in substantive discrimination claims. 548 U.S. 53, ——, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). Instead, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C.Cir.2006)). The Court added, however, that a materially adverse action does not include "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Even under the less stringent "material adversity" requirement of the retaliation claim, Garrison has not offered sufficient factual allegations to survive the motion to dismiss. As previously discussed, Garrison's settlement with the DHMH resulted in the recision of her five-day suspension with backpay. *Cf. Burlington Northern*, 126 S.Ct. at 2417 (finding that "an *indefinite* suspension without pay could well act as a deterrent," even if the employee, who was ultimately suspended for *37 days*, eventually receives backpay) (emphasis added). Furthermore, any other alleged adverse employment action aside from, arguably, the one-day suspension did not rise to the level of "objective" materiality required by Title VII. *See id.* at 2415 (noting the standard for judging harm must be objective). Garrison simply did not suffer

any employment action that would dissuade a reasonable employee from making a charge of discrimination.

■ Moreover, even if Garrison did suffer an adverse employment action, she has failed to allege a causal connection between a protected activity and an adverse action, including the one-day suspension. Garrison filed an initial complaint of discrimination with the EEOC on May 12, 2005, and a formal complaint on June 20, 2005. (Complaint at ¶ 11). The retaliatory conduct, however, that Garrison alleges caused her injury did not begin until late September 2005, more than three months after she had engaged in a protected activity. The only employment action with any temporal connection to the EEOC filing was the June 20 one-day suspension. According to Garrison, however, this one-day suspension was tied to her alleged insubordination at a June 16, 2005, meeting with Mouli. (*Id.* at ¶¶ 55–56.) Therefore, the one-day suspension is not causally connected with Garrison engaging in a protected activity. Instead of alleging retaliatory conduct, Garrison has depicted a turbulent employment relationship marred by repeatedly poor work performance and evaluations. Thus, the Title VII retaliation claim will be dismissed.

### The ADA Claim

■ Garrison asserts a disability discrimination claim under Title I of the ADA in Count III. In *Bd. of Trs. of Univ. of Alabama v. Garrett,* 531 U.S. 356, 374 n. 9, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), the Supreme Court found that "Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I" of the ADA. Garrison argues that the Court was only considering the state's Eleventh Amendment immunity in the context of a suit for money damages, and that *Garrett* noted "the ADA still prescribes standards

applicable to the States," which can be enforced "by private individuals in actions for injunctive relief under *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." *Id. Ex Parte Young,* however, only authorizes injunctive relief against a state official, acting in his official capacity, rather than against the state itself. *See Walsh v. Nevada Dep't of Human Res.,* 471 F.3d 1033, 1036 (9th Cir. 2006) ("Sovereign immunity [ ] does not bar Title I suits against state officials for prospective injunctive and declaratory relief."). Thus, Title I of the ADA does not provide an appropriate vehicle for demanding declaratory relief when it is directly asserted against a state defendant.

Here, Garrison has only named the DHMH as a defendant. Therefore, because a state is immune from a claim for money damages under Title I of the ADA, and because an action for injunctive relief is only available against a named state official, the motion to dismiss Count III will be granted.

### The § 1981 Claim

■ In Count V, Garrison asserts a § 1981 claim, brought under § 1983, for negligent hiring and/or training causing unlawful discrimination. *See Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir.1995) (noting that when a suit is brought against a county, § 1983 is the exclusive federal remedy for violation of the rights guaranteed in § 1981). The § 1983 mechanism for enforcing a § 1981 right, however, may only be properly asserted against a municipality and not the state itself, or one of its agencies. Furthermore, a § 1981 claim brought against the State of Maryland is barred by the Eleventh Amendment. *Khan v. State of Maryland,* 903 F.Supp. 881, 889 (D.Md. 1995). Additionally, the Supreme Court has held that a State, unlike a municipality, is not a "person" under § 1983, and is

therefore not subject to liability under the Act. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, because Garrison does not dispute that the DHMH is the equivalent of the State of Maryland for the purposes of this suit, Count V will be dismissed.

### The State Law Claims

 Although Garrison concedes that any potential state-based tort claims "might be barred" for failure to comply with the Maryland Tort Claims Act ("MTCA"), Md.Code Ann., State Gov't § 12–106(b), she separately asserts a cause of action under Article 49B of the Maryland Code. (Pl.'s Opp. Mem. at 11.) Garrison is correct that her tort claims would be barred since she has not exhausted her administrative remedies under the MTCA, and the State has therefore not waived its sovereign immunity. *See Rivera v. Prince George's County Health Dep't,* 102 Md. App. 456, 471, 649 A.2d 1212 (1994). Additionally, even assuming that the State has waived its immunity by creating a private cause of action under the recently amended Art. 49B, the amendment was specifically set to take effect on October 1, 2007, and to be applied only prospectively, "with no effect on or application to any cause arising before" that date. (Pl.'s Opp. Mem. at Ex. 2, 6–7.) Therefore, because Garrison's suit was filed on May 4, 2007, before the amendment's effective date, Garrison has no claim under Art. 49B.[1] Garrison's state law claims in Count VI will be dismissed.

A separate order follows.

---

**1.** It is also worth noting that the MCHR found *no* probable cause to believe that Garrison had been discriminated against in violation of Article 49B. (Pl.'s Legal Issues at Ex. 1, MCHR at 3.) Instead, the MCHR concluded that Garrison's work problems were related to her poor performance and conduct. *(Id.)*

### *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. the defendant's motion to dismiss (docket entry no. 3) is **GRANTED** as to all Counts; and

2. the Clerk shall **CLOSE** this case.